## JAKE SOMERVILLE *v.* THE STATE.

1. EVIDENCE. — When a crime has been proved, and the circumstances point to the accused as the perpetrator, facts tending to show a motive, though remote, are admissible. See the opinion for evidence inadmissible under this rule.

2. SAME. — If the defendant has properly reserved his bill of exceptions, a conviction will ordinarily be set aside if illegal evidence was admitted over his objections. Courts will rarely presume that the particular evidence which was wrongfully admitted could have had no influence on the deliberations of the jury.

3. PRACTICE. — The rule that a party cannot attack the testimony of his own witness has been so far modified in this State as that any party, when facts stated by his own witness are injurious to his cause, may attack his testimony in any other manner than by proving the bad character of the witness.

4. INDICTMENTS are not vitiated by bad spelling. The word "eight" being spelled "eiget" could not have misled the defendant.

APPEAL from the District Court of Milam. Tried below before the Hon. S. FORD.

The indictment charged that the appellant murdered Charles E. Roberts, in the town of Hearne, Robertson County, on the fifth day of April, one thousand "eiget"

hundred and seventy-six. A change of venue to Milam County was granted. He was there tried, and a verdict of guilty of murder in the first degree found against him, with the punishment of confinement in the penitentiary for life assessed against him, — the homicide having been committed before the Constitution of 1876 went into effect.

The first witness who testified for the State related, in substance, that about three o'clock on the evening of the killing, he saw the deceased, the defendant, and a policeman together. About eight or nine o'clock that night he heard the report of a pistol from a point some hundred yards north of his (witness's) saloon, where the body of deceased was subsequently found. About five minutes later, defendant came into the saloon alone, and called for a drink. He there and then said that he had just "laid a fellow out," and pulled out a pistol, with which he said he did it. He did not seem to be excited, but somewhat in liquor.

The second witness for the State testified that he saw the deceased and the defendant together on the morning of the 4th of April, 1876, and again later in the day, or about three o'clock in the evening. The store of Mr. Morris had been burglarized the night before the killing, and the deceased had got a horse the next morning from a negro boy at Exom's livery-stable, during the absence of the proprietor, and had gone, it was understood, to a store some seven miles in the country. The defendant and others pursued the deceased, and returned about twelve or one o'clock. About three o'clock, P. M., on the evening of the homicide, Exom said to the defendant, in the presence of the witness, that deceased wanted his money back that he had paid for the hire of the horse; that he was mad because he had been brought back, and had said that he would " fix some of them " if they didn't let him alone. Defendant replied, " Wait until night, and see who will fix him."

A third witness testified that, between the hours of eight

and ten on the fatal night, the defendant and the deceased came into his saloon and took a drink together. The deceased seemed to be angry with the defendant. They passed out of the saloon together, and in a very few minutes witness heard the report of a pistol. The report did not sound to witness as coming from the direction in which the body was found.

The essence of Perry's testimony, for the defence, was that, at seven o'clock on the evening of the killing, he was sent with a message to the defendant by one Brown, for whom the defendant worked. He found him in a saloon, and called him to the door and delivered it. From the saloon, the defendant accompanied witness and one Murphy to witness's house, and remained there, without leaving, until half-past eleven o'clock that night. Witness saw two strangers in the saloon spoken of, who left in advance of witness, the defendant, and Murphy.

In rebuttal, the State introduced the proprietor of the saloon spoken of by Perry, and he testified that he saw the two negroes who looked into the saloon. They called no one out, that witness heard, but passed on up the street. There were four men besides witness in the saloon at the time, — defendant and the deceased, and two men asleep. No one went out of the saloon except the deceased and the defendant, and they went off together, and with no one else.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, and *W. B. Dunham*, for the State, cited Pasc. Dig., art. 2997, on exceptions to indictments, as regulated by the practice; and as to bad spelling, 2 Texas Ct. App. 293; 2 Texas Ct. App. 422; 41 Texas, 487.

ECTOR, P. J. The defendant was indicted in the District Court of Robertson County, for the murder of Charles E.

Roberts, on the fifth day of April, 1876. A change of venue was granted, on the application of defendant. He was tried at the March term, 1879, of the District Court of Milam County, convicted of murder in the first degree, and his punishment assessed at confinement in the penitentiary for life.

The evidence shows that Roberts was killed in the city of Hearne, in Robertson County, on the night of the 5th of April, 1876. He came to his death from a pistol or gunshot wound. The shot entered the back of the neck, passed through the spinal column and lower part of the head, and the left jaw. The ball with which he was shot was larger than a buckshot. The report of a pistol was heard between the hours of eight and nine o'clock at night, in the direction of where the body of deceased was found in about five minutes afterwards. No eye-witness of the killing was produced.

The first error assigned is: "The court erred in overruling defendant's objections to the testimony of Morris, as shown by bill of exceptions." On the trial of the cause, the State introduced H. Morris as a witness, and asked him to state whether or not, on or about the fourth day of April, 1876, goods were stolen from his store, in the town of Hearne, in Robertson County, and whether, or not, he recovered his goods aftewards, and if he did, to state all about it; to which counsel for defendant objected, because the questions did not call for answers that were competent and relevant evidence. His objections were overruled, and the witness was permitted to state that his store was broken open by some person on the night of the 4th of April, 1876, and a quantity of dry goods stolen; that he made search for his goods next morning, and that there was some excitement in Hearne in consequence; that he got an officer, and started to search some negro cabins; that they met one Code Brown, who told him he could find his goods, and who introduced Somerville to him; that Somerville said he and another man

were coming into town, late the night before, and they saw two men, who dropped the goods in the street and ran. Witness and defendant then went to a negro cabin; could not get in at the front door, and defendant went round to the rear, and, after a little while, opened the front door. There was a colored girl in the house, and at defendant's request she opened two trunks and took out the goods which had been stolen from witness.

Counsel for defendant objected to this evidence from time to time, as it was given in, because it was irrelevant, incompetent, and calculated to prejudice the minds of the jury against him; which objections were overruled, as appears by his bill of exceptions.

Counsel for the State insist that this evidence was admissible, to show the motive for the crime. When a crime has been proved, and the circumstances point to the accused as the perpetrator, facts tending to show a motive, though remote, are admissible. We have searched the record carefully, and we fail to see that the evidence excepted to has the most remote bearing as tending to show a motive on the part of the defendant to kill the deceased. Proof of a distinct crime, as a general rule, is inadmissible. The goods of Morris were stolen on the night of the 4th of April, and Roberts was killed on the following night. The acts and conduct of the defendant having relation to the recovery of the stolen property were calculated to produce in the minds of the jurors a prejudice against the defendant, and create the belief that he was a *particeps criminis* in the theft of Morris's goods. It neither shed light on the killing of Roberts, nor strengthens the chain of circumstances connected with the crime for which he was on trial. We believe that the court committed a material error in admitting this evidence. When a defendant is on trial for a capital felony, it is a matter of the highest importance to him that no improper testimony be admitted against him, over his objection.

Mr. Wharton says : " In criminal cases, courts will' rarely presume that the particular evidence which has been wrongfully admitted could have no influence on the deliberations of the jury." Whart. Cr. Law (7th ed.), sect. 3258 ; *Preston* v. *The State*, 4 Texas Ct. App. 186 ; *The People* v. *Williams*, 18 Cal. 187 ; *Peck* v. *The State*, 2 Humph. 78.

The evidence set out in the second bill of exceptions was clearly competent. The rule that a party introducing a witness shall not attack his testimony, is so far modified as that any party, when facts stated by a witness are injurious to his cause, may attack his testimony in any other manner except by proving the bad character of the witness. Pasc. Dig., art. 3133.

In the printed part of the indictment, a typographical error occurs in the alleged date of the offence, making " *eight*" read " eiget." It is believed that, as the allegation stands in the indictment, it admits of but one construction, and the intention of the pleader is unmistakable. It is certain and intelligible, the " h " being substituted for the " e " by intendment. It certainly could not have misled the defendant as to what he was called upon to answer, and the conviction had would bar a subsequent prosecution. *Thomas* v. *The State*, 2 Texas Ct. App. 293 ; *Taylor* v. *The State*, 5 Texas Ct. App. 569 ; *Earp* v. *The State*, 41 Texas, 487 ; *The State* v. *Williamson*, 43 Texas, 501.

Because the court erred in admitting the evidence set out in the first bill of exceptions, the judgment rendered below is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*